## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**HOWARD BURL**

**VERSUS**

**RAYMOND LABORDE**
**CORRECTIONAL CENTER**

**CIVIL ACTION**

**NO. 21-2224**

**SECTION "J"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Howard Burl ("Burl"), is a convicted inmate incarcerated in the Raymond Laborde Correctional Center, in Cottonport, Louisiana. On September 11, 2015, Burl was charged in St. John the Baptist Parish with one count of obstruction of justice in violation of La. Rev. Stat. § 14:130.1, one count of possession with intent to distribute crack cocaine in violation of La. Rev. Stat. § 40:967(A)(1), one count of possession with intent to distribute powder cocaine in violation of La. Rev. Stat. § 40:967(A)(1), one count of illegal use of weapons in violation of La. Rev. Stat. § 14:95(E), four counts of felon in possession of a firearm in violation of La. Rev. Stat. § 14:95.1,

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

and one count of illegal possession of a stolen firearm in violation of La. Rev. Stat. § 14:69.1(A).[2]

Burl entered a plea of not guilty in the case.[3]  On January 12, 2016, the State amended the bill of

information as to count five, possession of a firearm by convicted felony, to add a previous

conviction.[4]

The record reflects that a trusted confidential informant advised Sergeant Michael Gil of

the St. John Parish Sheriff's Office Special Operations Division that Burl was in possession of a

firearm and illegal narcotics at his residence in Edgard, Louisiana.[5]  The confidential informant

further advised that Burl carried a gun with him while he sold drugs and that he was traveling to

the Mt. Airy area in an older model brown Toyota Camry on July 23, 2015.  Sergeant Gil

determined the license plate number for Burl's vehicle.  He also learned that Burl did not have a

driver's license.  On that date, Sergeant Gil located Burl in Mt. Airy.  Thereafter, he contacted

detectives in the St. John Parish Sheriff's Office Narcotics Bureau to assist him in surveilling Burl.

Detective Joshua Gilboy, with the assistance of Lieutenant Tanner Mangano, attempted to stop

Burl's vehicle after Burl failed to stop at a stop sign and failed to utilize his turn signal.  As Burl

fled in an attempt to evade the traffic stop, he was observed throwing two plastic bags out of his

car window.  Sergeant Gil noted the location of the plastic bags, and subsequently retrieved the

two bags.  One clear plastic bag contained thirteen individually wrapped bags of powder cocaine

---

[2]St. Rec. Vol. 1 of 5, Bill of Information, 9/11/15.

[3]St. Rec. Vol. 1 of 5, Minute Entry, 9/21/15.

[4]St. Rec. Vol. 2 of 5, Motion to Amend Bill of Information, 1/11/16; Order, 1/12/16; Amended Bill of
Information, 1/12/16.

[5]The facts were taken from the opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State
v. Burl*, 282 So. 3d 316, 318 (La. 5th Cir. 2019); St. Rec. Vol. 5 of 5, 5th Cir. Opinion, 18-KA-698, pp. 1-2, 10/2/19.

as well as a bag of approximately four grams of crack cocaine.  A second clear plastic bag contained 5.4 grams of marijuana.  After detectives stopped Burl's car and read Burl his *Miranda*[6] rights, he denied possessing narcotics, but admitted that he had a firearm underneath his seat.  A Smith & Wesson revolver was found in Burl's vehicle.  A subsequent search of Burl's residence pursuant to a search warrant led to the recovery of two stolen rifles: a Harrington and Rich 1871 45-70 rifle and a Remington 1100 shotgun.

On September 18, 2017, Burl waived his right to a jury trial.[7]  The State severed three felon in possession of firearms charges and the illegal possession of a stolen weapon charge, all charges which stemmed from the search warrant, and proceeded on the first five counts.[8]  Burl was tried on December 18 and 19, 2017, and was found guilty as charged as to counts three, four, and five, and guilty of the lesser included offense of attempted of obstruction of justice as to count one and the lesser included offense of possession of crack cocaine as to count two.[9]  The State filed a multiple offender bill of information on February 20, 2018.[10]  On March 19, 2018, the Trial Court found Burl to be a second felony offender.[11]  On April 16, 2018, the Trial Court amended its previous order and found Burl to be a third felony offender as to the first four counts.[12]

---

[6]*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[7]St. Rec. Vol. 1 of 5, Minute Entry, 9/18/17; St. Rec. Vol. 2 of 5, Defendant's Waiver of Jury Trial, 10/23/17; Order, 10/24/17; St. Rec. Vol. 3 of 5, Hearing Transcript, 9/18/17.

[8]St. Rec. Vol. 2 of 5, Trial Transcript, p. 557, 12/18/17.

[9]St. Rec. Vol. 1 of 5, Trial Minutes, 12/18/17; Trial Minutes, 12/19/17; St. Rec. Vol. 2 of 5, Trial Transcript, 12/18/17; Written Reasons for Judgment, 12/19/17; Verdicts, 12/19/17; St Rec. Vol. 3 of 5, Trial Transcript (con't), 12/18/17; Trial Transcript, 12/19/17.

[10]St. Rec. Vol. 2 of 5, Multiple Bill, 1/8/18.

[11]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 3/19/18; St. Rec. Vol. 2 of 5, Multiple Offender Written Reasons for Judgment, 3/19/18; St. Rec. Vol. 3 of 5, Multiple Bill Hearing Transcript, 3/19/18.

On May 2, 2018, the Trial Court sentenced Burl to ten years as to count one, five years as to count two, twenty-five years as to count three, and ten years as to count four, all sentences to be served concurrently at hard labor without the benefits of probation, parole, or suspension of sentence.[13]  The Trial Court sentenced Burl to a consecutive twenty-five year sentence without the benefits of probation, parole, or suspension of sentence as to count five for his felon in possession of a firearm conviction.[14]  The Trial Court also sentenced Burl to a ninety day consecutive sentence for three instances of direct contempt of court.[15]

On direct appeal, Burl's appointed counsel asserted that the Trial Court erred in imposing an excessive sentence by ordering the sentence for count five consecutive to the sentences for counts one through four.[16]  Burl filed a pro se brief in which he asserted that his appellate counsel was ineffective for failing to raise an issue of ineffective assistance of trial counsel due to a conflict of interest.[17]

On October 2, 2019, the Louisiana Fifth Circuit found that the failure to object precluded Burl from arguing that the consecutive nature of his sentences render them excessive.[18]  The court found that Burl's sentences were not unconstitutionally excessive.[19]  The court found that the

---

[12]St. Rec. Vol. 2 of 5, Amended Multiple Offender Written Reasons for Judgment, 4/16/18; Post Multiple Offender Hearing Motion and Memorandum, 3/27/18; St. Rec. Vol. 3 of 5, Hearing Transcript, 4/16/18.

[13]St. Rec. Vol. 1 of 5, Sentencing Minutes, 5/2/18; St. Rec. Vol. 3 of 5, Sentencing Transcript, 5/2/18.

[14]*Id.*; St. Rec. Vol. 3 of 5, Sentencing Transcript, 5/2/18.

[15]*Id.*; St. Rec. Vol. 3 of 5, Sentencing Transcript, 5/2/18.

[16]St. Rec. Vol. 5 of 5, Appellate Brief, 2018-KA-0698, 4/9/19.

[17]St. Rec. Vol. 5 of 5, Pro Se Appellate Brief, 2018-KA-0698, 9/11/18 (signed 8/28/18).

[18]*Burl*, 282 So. 3d at 320; St. Rec. Vol. 5 of 5, 5th Cir. Opinion, 18-KA-698, at pp. 3-4, 10/2/19

[19]*Id.* at 320-22; St. Rec. Vol. 5 of 5, 5th Cir. Opinion, 18-KA-698, at pp. 4-6, 10/2/19.

appellate record was insufficient to address Burl's claims of ineffective assistance of counsel and that they should be considered on post-conviction relief.[20]  The court found Burl's twenty-five year sentence as to count three to be illegally lenient and that Burl should have been sentenced to life imprisonment, but declined to exercise its supervisory jurisdiction to correct the sentence and rather affirmed the sentence as imposed.[21]  The court deleted the parole restriction as to counts one and two and found that only the first two years of the sentence as to count three should be served without benefit of parole, probation, or suspension of sentence.[22]  The court remanded the matter for correction of the uniform commitment order.[23]

On July 2, 2020, the Louisiana Supreme Court issued a denial without stated reasons of the related writ application.[24]  Burl's convictions and sentences were final ninety days later, on September 30, 2020, because he did not file for review with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

On August 27, 2020, Burl filed an application for post-conviction relief asserting the following claims for relief: (1) ineffective assistance of counsel of appellate counsel for failing to

---

[20]*Id.* at 321-22; St. Rec. Vol. 5 of 5, 5th Cir. Opinion, 18-KA-698, at p. 6, 10/2/19.

[21]*Id.* at 322; St. Rec. Vol. 5 of 5, 5th Cir. Opinion, 18-KA-698, at pp. 7-8, 10/2/19.

[22]*Id.* at 323; St. Rec. Vol. 5 of 5, 5th Cir. Opinion, 18-KA-698, at pp. 8, 10/2/19.

[23]*Id.*; St. Rec. Vol. 5 of 5, 5th Cir. Opinion, 18-KA-698, at pp. 8-9, 10/2/19.

[24]*State v. Burl*, 297 So. 3d 764 (La. 2020); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2019-KO-01948, 7/2/20; Writ Application, 19 KO 1948, 12/12/19 (metered 11/1/19).

raise on appeal ineffective assistance of trial counsel due a conflict of interest; (2) he was denied due process based upon judicial bias; (3) he was denied his right to a speedy trial when his counsel failed to file a motion to quash the bill of information; (4) an illegal search and seizure violated the Fourth Amendment; and (5) ineffective assistance of trial counsel due to a conflict of interest and for failure to move to recuse the Trial Judge, object to the use of a laboratory report in lieu of live testimony, and object to his sentence or move for reconsideration.[25]  In response, the State asserted procedural objections including that claim two was barred by La. Code Crim. P. art. 930.4(B), and that claims three and four were barred by La. Code Crim. P. arts. 930.4(B) and (C).[26]  On November 19, 2020, the Trial Court found the State's procedural objections were meritorious and denied the application without considering the merits of any of the other claims.[27]

The Louisiana Fifth Circuit denied Burl's related writ application.[28]  The court found that Burl's writ application did not include necessary documentation pursuant to Uniform Rules, Courts of Appeal, Rule 4-5.[29]  The court noted that it had issued an order to show cause to Burl, but that he had not responded.[30]

On May 25, 2021, the Louisiana Supreme Court denied Burl's related writ application finding he failed to show ineffective assistance of counsel pursuant to *Strickland v. Washington*,

---

[25]St. Rec. Vol. 5 of 5, Uniform Application for Postconviction Relief, 8/27/20.

[26]St. Rec. Vol. 5 of 5, Procedural Objections to the Applicant's Post-Conviction Relief Application, 10/12/20.

[27]St. Rec. Vol. 5 of 5, Written Ruling of Writ Application, 11/19/20.

[28] St. Rec. Vol. 5 of 5, 5th Cir. Order, 20-KH-451, 2/1/21; 5th Cir. Writ Application, 20-KH-451, 12/11/20 (signed 12/7/20).

[29]*Id.* at p. 1.

[30]*Id.*

466 U.S. 668 (1984), and failed to satisfy his post-conviction burden of proof as to his remaining

claims, citing La. Code Crim. P. art. 930.2.[31]

## II.    Federal Habeas Petition

On November 11, 2021, Burl filed his original petition for federal habeas corpus.[32]  Burl

raises the following claims for relief: (1) ineffective assistance of appellate counsel for failing to

raise on appeal ineffective assistance of trial counsel due to a conflict of interest; (2) denial of due

process based upon judicial bias; (3) denial of a speedy trial due to ineffective assistance of counsel

in failing to file a motion to quash the bill of information; (4) Fourth Amendment violation of

search and seizure; and (5) ineffective assistance of counsel due to a conflict of interest and for

failure to move to recuse the Trial Judge, object to the use of a laboratory report in lieu of live

testimony, and object to his sentence or move for reconsideration.[33]

The State filed a response admitting that Burl's petition is timely and that his claims are

exhausted.[34]  The State summarily asserts that Burl's claims are meritless.[35]  Burl filed a traverse

noting that the State did not actually address the merits of his claims and reiterating his claims.[36]

---

[31]*State v. Burl*, 315 So. 3d 1275 (La. 2021); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2021-KH-00395, 5/25/21; La. S. Ct. Writ Application, 2021-KH-00395, 2/26/21.

[32]Rec. Doc. No.3.

[33]Rec. Doc. No. 3, pp. 3-8; Rec. Doc. No. 3-2, pp. 11-21.

[34]Rec. Doc. No. 7.

[35]Rec. Doc. No. 7-1, p. 7.

[36]Rec. Doc. No. 9.

### III.    <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[37] applies to this petition, which was filed in this Court under the mailbox rule on November 11, 2021.[38]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that Burl's petition was timely filed, and his claims are exhausted.

### IV.    <u>Standards of a Merits Review</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination

---

[37]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[38]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Burl certified that he placed his petition in the prison mailing system on November 11, 2021.  Rec. Doc. No. 3-2, p. 8.

of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2)

(2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The amended statute also codifies

the "presumption of correctness" that attaches to state court findings of fact and the "clear and

convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.

28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are

reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference

be given to the state court's decision unless the decision is "contrary to or involves an unreasonable

application of clearly established federal law" as determined by the United States Supreme Court.

*Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is

that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so

obvious that a clearly established rule applies to a given set of facts that there could be no

'fairminded disagreement' on the question."  *White v. Woodall*, 572 U.S.415, 134 S. Ct. 1697,

1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court

must extend a rationale before it can apply to the facts at hand,' then by definition the rationale

was not 'clearly established at the time of the state-court decision.'"  *White*, 134 S. Ct. at 1706

(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a

conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state

court decides a case differently than the Supreme Court has on a set of materially indistinguishable

facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*,

210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law

if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V.    Ineffective Assistance of Counsel (Claims One, Three, and Five)

In claim one, Burl asserts that his appellate counsel was ineffective for failing to raise on appeal ineffective assistance of trial counsel. In claim three, Burl further asserts that his trial counsel was ineffective in failing to move to dismiss the bill of information due to violation of

speedy trial under state and federal law. In claim five, he asserts that he was constructively denied the right to effective assistance of counsel. He claims that trial counsel had a conflict of interest and that they constantly argued, had a lack of trust, threatened physical bodily harm, and that counsel disliked him. He further claims his counsel was ineffective in failing to: (1) recuse the judge; (2) object to the use of a laboratory report in lieu of live testimony; and (3) object to his sentences or move for reconsideration.

Burl raised these claims on state post-conviction review, which ultimately were denied by the Louisiana Supreme Court for failure to meet the *Strickland* standard.[39]

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (1995).

---

[39]*Burl*, 315 So. 3d at 1275; St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2021-KH-00395, 5/25/21.

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104, 131 S.Ct. 770 (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702, 122 S.Ct. 1843 (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland,* 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's " 'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.' ") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bell*, 535 U.S. at 695 (quoting *Strickland*, 466 U.S. at 694); *United States v. Kimler*,

167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]he petitioner must 'affirmatively prove,' [and] not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190, 131 S.Ct. 1388 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009)). The federal courts must take a "highly deferential" look at

counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, and quoting *Knowles*, 556 U.S. at 121 n.2, 129 S.Ct. 1411).

### A.    Constructive Denial of Counsel

Burl claims that he was constructively denied effective assistance of counsel.  In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court held that a defendant may be constructively denied counsel, even though an attorney had been appointed to represent him.  The *Cronic* Court recognized that the performance of counsel may be so inadequate as to constitute no assistance of counsel at all, despite the physical presence of an attorney at the proceeding.  *Cronic*, 466 U.S. at 654 n. 11.  The *Cronic* presumption of prejudice arises in circumstances where: (1) there exists a "complete denial of counsel" or a denial of counsel "at a critical stage" of defendant's trial; (2) defense counsel fails to "subject the prosecution's case to meaningful adversarial testing"; or (3) counsel "is called upon to render assistance where competent counsel very likely could not." *Cronic*, 466 U.S. at 658-59 (citations omitted).  Only in these "circumstances of magnitude" may "the likelihood that the verdict is unreliable [be] so high" that a constitutional violation may be found.  *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).

The Supreme Court has also emphasized that for *Cronic* to apply "the attorney's failure must be complete."  *Bell*, 535 U.S. at 697.  "For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*," the Supreme Court held that a case does not come under *Cronic* merely because counsel failed to "oppose the prosecution ... at specific points" in the proceeding. *Bell*, 535 U.S. at 697.  The distinction between counsel's failure to oppose the prosecution entirely and counsel's failure to do so at certain points is a "difference ... not of degree but of kind."  *Bell*,

535 U.S. at 697. The *Cronic* standard applies only when counsel has entirely failed to challenge the prosecution's case. *Id.* at 697; *Riddle v. Cockrell*, 288 F.3d 713, 718 (5th Cir. 2002) ("constructive denial of counsel" sufficient to support a presumption of prejudice arises only when counsel was absent from the courtroom, there was an actual conflict of interest, or there was official interference with the defense); *Mayo v. Cockrell*, 287 F.3d 336, 340 n.3 (5th Cir. 2002); *Burdine v. Johnson*, 262 F.3d 336, 344 n.4 (5th Cir. 2001).

The petitioner has the burden to show that he was constructively denied counsel. *Childress v. Johnson*, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997). "It is not enough for the defendant to show mere 'shoddy representation' or to prove the existence of 'errors, omissions, or strategic blunders' by counsel. Bad lawyering, regardless of how bad, does not support the [per se] presumption of prejudice." *Johnson v. Cockrell*, 301 F.3d 234, 238-39 (5th Cir. 2002) (citing *Jackson v. Johnson*, 150 F.3d 520, 525 (5th Cir. 1998)) (quoting *Childress*, 103 F.3d at 1228-29).

The issue of the constructive denial of counsel under *Cronic* is a mixed question of law and fact. *French v. Jones*, 225 F.3d 658, 2000 WL 1033021, at *3 (6th Cir. Jul. 18, 2000) (Table, Text in Westlaw). Thus, the question before this court is whether the state courts' denial of relief on this issue was contrary to or an unreasonable application of United States Supreme Court precedent.

The Louisiana Supreme Court's denial of relief on this issue was not specifically based on *Cronic*. The court instead addressed Burl's ineffective assistance of counsel claims under the standards of *Strickland*. Nevertheless, Burl has not shown error in the application of that standard or that his claims should have been evaluated or would have been evaluated differently under the *Cronic* presumption of prejudice.

Initially, the record does not demonstrate a complete failure by his trial counsel entirely to oppose the prosecution's case. On the contrary, the state court record reflects that Burl's appointed counsel subjected the prosecution's case to meaningful adversarial testing at each stage. Counsel filed various pretrial motions.[40] Counsel subpoenaed witnesses for trial.[41] The transcripts of the state court proceedings demonstrate that counsel was fully familiar with the case and adequately prepared to challenge the State's evidence. The trial transcript reflects that Burl's trial counsel actively challenged the State's evidence throughout the trial. There is simply nothing in this record to suggest that Burl's trial counsel was "inert" in his representation at trial. *Jackson*, 150 F.3d at 525.

Burl has not established that he was constructively denied trial counsel under the *Cronic* standard. The denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law. His specific challenges to trial counsel's representation of him will be further addressed later in this report under *Strickland*.

### B.    Conflict of Interest

Burl claims that his trial counsel was ineffective due to a conflict of interest. Burl's claim of conflict of interest is two-fold. He initially claims that conflicts of interest in Louisiana Public Defender system are common. He generally points to the funding structure, excessive caseloads, lack of resources, time deficits, and the allowance of attorneys to maintain a private practice which he claims results in under-serving indigent defendants. He claims that trial counsel did not like

---

[40] St. Rec. Vol. 1 of 5, Motion for Preliminary Examination, 10/15/15; Motion for Particulars and Discovery and for Production of Evidence Favorable to the Accused, 10/15/15; St. Rec. Vol. 2 of 5, Second Motion for Discovery, 12/16/16; Motion for Particulars, Discovery and Inspection, 12/16/15; Motion to Suppress, 1/17/17.

[41] St. Rec. Vol. 2 of 5, Trial Transcript, 12/18/17, at p. 550; St. Rec. Vol. 3 of 5, Trial Transcript, 12/19/17, at pp. 658-59.

him and that they constantly argued.  He also claims that they did not trust one another, and that there were threats of bodily harm.

" 'Under the Sixth Amendment, if a defendant has a constitutional right to counsel, he also has a corresponding right to representation that is free from any conflict of interest.' "  *Morin v. Thaler*, 374 F. App'x 545, 551 (5th Cir. 2010) (quoting *United States v. Vaquero*, 997 F.2d 78, 79 (5th Cir. 1993)).  The Supreme Court has held that prejudice is presumed when counsel is burdened by an actual conflict of interest.  *Strickland*, 466 U.S. at 692.  However, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' "  *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 348 (1980)).  In other words: "[T]he *possibility* of conflict is insufficient to impugn a criminal conviction.  In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest *adversely affected* his lawyer's performance."  *Cuyler,* 446 U.S. at 350 (emphasis added).  Consequently, application of the actual conflict or presumed prejudice standard articulated in *Cuyler* is limited.

"[A]n actual conflict of interest" mean[s] precisely a conflict *that affected counsel's performance*-as opposed to a mere theoretical division of loyalties.  *Mickens*, 535 U.S. at 171.  An "actual conflict" exists when counsel "is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests."  *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000) (citing *Strickland*, 466 at 692).  An "adverse effect" requires proof that " 'some plausible alternative defense strategy or tactic' could have been pursued but was not because of the actual conflict impairing counsel's performance."  *Id.*  Notably, the Supreme Court has only applied the presumption to conflicts of

interest arising from multiple concurrent representation of defendants and seemingly limited the scope of the rule to those instances. *Mickens*, 535 U.S. at 172-175.

The Fifth Circuit has determined that the Supreme Court's holding in *Cuyler* is limited "to actual conflicts resulting from a lawyer's representation of multiple criminal defendants." *Beets v. Scott*, 65 F.3d 1258, 1266 (5th Cir. 1999). The court explained that "*Strickland* offers a superior framework for addressing attorney conflicts outside the multiple or serial client context." *Id.* at 1265. The Fifth Circuit further elaborated that "[i]n stark contrast to multiple representation situations, there is little meaningful distinction between a lawyer who inadvertently fails to act and one who for selfish reasons decides not to act." *Id.* at 1271; *Moreland v. Scott*, 175 F.3d 347, 349 (5th Cir. 1999). Thus, "[u]nder *Beets*, cases in which it is alleged that the attorney's representation was affected by his own self-interest are evaluated under the more relaxed *Strickland* standard." *Moreland*, 175 F.3d at 349 (citing *Beets*, 65 F.3d at 1271-72).

"When an attorney labors under a conflict of interest, he is prevented, by his own self interest or by his interest in another's welfare, from vigorously promoting the welfare of his client." *Vega v. Johnson*, 149 F.3d 354, 360 (5th Cir. 1998). "Mere disagreement about strategic litigation decisions is not a conflict of interest." *United Stated v. Fields*, 483 F.3d 313, 353 (5th Cir. 2007) (citing *United States v. Corona-Garcia*, 210 F.3d 973, 977 n. 2 (9th Cir. 2000) ).

Burl's allegations do not involve multiple representations. His trial counsel was not simultaneously representing Burl and a State witness, nor does the record show that defense counsel was required to cross-examine a witness who was testifying against Burl and who was a client of the attorney. While Burl suggests that because his attorney was an indigent defender, he had insufficient time and resources to defend the case, he simply does not allege a conflict of

interest based upon multiple representation.  Further, he offers absolutely no proof to support his assumptions as it pertains to his counsel.

Burl specifically alleges that defense counsel disliked him and that they argued, lacked trust in one another, and threatened physical bodily harm.[42]  The evidence of record establishes that defense counsel, Shannon Battiste, announced on the morning of trial that he and Burl were not "getting along."[43]  Battiste specifically noted "foul attitude" and "language," and noted that "hostility" existed between them.[44]  Battiste explained that Burl insulted and cursed him out.[45]  At that time, Burl responded that Battiste did not visit him and alleged that he did nothing for him.[46]  Battiste countered that he had met with Burl in jail on at least three occasions, and had also met with him each time Burl had been brought into court.[47]  The Trial Judge advised Burl to cooperate with Battiste and took a brief recess so that they could talk.[48]  After court resumed, there was no further discussion about any issue between Burl and his counsel.

When a personal conflict of interest is alleged, as here, the pertinent inquiry is whether Burl has demonstrated that his "attorney's performance fell below an objective standard of reasonableness and that it prejudiced the defense, undermining the reliability of the proceeding."

---

[42]The only evidence of a threat of bodily harm occurred at a post-sentencing hearing on August 8, 2018, when Burl stated to Battiste, "I'm going to kill you when I get out of jail."  St. Rec. Vol. 3 of 5, Hearing Transcript, 8/8/18, at pp. 7-8.

[43]St. Rec. Vol. 2 of 5, Trial Transcript, 12/18/17, at p. 549.

[44]*Id.*, at 549-50.

[45]*Id.*, at 553.

[46]*Id.*, at 552.

[47]*Id.,* at 552-53.

[48]*Id.,* at 551-53.

*Beets*, 65 F.3d at 1272-73. "*Strickland* more appropriately gauges an attorney's conflict of interest that springs not from multiple client representation but from a conflict between the attorney's personal interest and that of his client." *Id.* at 1260. Applying these standards, Burl has not demonstrated that he was prejudiced by his attorney's conduct and the record contains no indication that a conflict compromised the quality of defense counsel's representation or affected the presentation of the defense. Again, this was not a case in which counsel was actively representing multiple parties with conflicting interests so as to suggest the division of loyalties. *Strickland*, 466 U.S. at 692.

Moreover, there is no indication that trial counsel was working against Burl's interest. Rather, the state court record reflects that counsel negotiated a favorable plea deal for Burl that would have resulted in a reduce ten-year sentence.[49] Burl rejected the deal as well as an offer for a thirty-year sentence on the day of trial.[50] Counsel meaningfully challenged the State's case at trial. Defense counsel made objections during presentation of the State's case and actively cross-examined the State's witnesses.[51] Counsel presented Burl's own testimony in his defense as well as the testimony of other witnesses.[52] Finally, the record establishes that defense counsel was successful to a certain extent in that the Trial Judge found Burl guilty of two lesser included offenses as to two counts.[53]

---

[49]*Id.,* at 555-58.

[50]*Id.,* at 556, 558.

[51]*Id.*, at 573-74; St. Rec. Vol. 3 of 5, Trial Transcript (con't), 12/18/17, at 584-85, 604, 605-12, 624-28, 641-45; Trial Transcript, 12/19/17, at 657, 704, 706, 727-28.

[52]St. Rec. Vol. 3 of 5, Trial Transcript, 12/19/17, at 661-88, 695-700, 711-17, 716-19, 721-24, 726-28.

[53]*Id.*, at 736-38.

Burl has not established that counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having a just result." *Strickland*, 466 U.S. at 686. Burl is not entitled to federal habeas corpus relief on these claims.

### C.    Failure to File Motion to Dismiss the Bill of Information

Burl claims that his counsel was ineffective in failing to dismiss the bill of information. He claims that his right to speedy trial was violated when trial was not commenced within two years of the filing of the original bill of information as required by La. Code Crim. P. art. 578.

Pursuant to La. Code Crim. P. art. 578(A)(2), the State had two years from the date of institution of prosecution to commence trial. The date of institution of prosecution is the date when the bill of information is filed. *State v. Watts*, 738 So. 2d 628, 629 (La. App. 5th Cir. 1999). The running of the period of limitation established in Article 578 is suspended, however, when a defendant files a motion to quash or other preliminary plea. The time period is suspended until the ruling of the court on the preliminary plea. *See* La. Code Crim. P. art. 580(A). For the purposes of art. 580, a preliminary plea is understood to be "any pleading or motion filed by the defense which has the effect of delaying trial." *State v. Brooks*, 838 So. 2d 778, 782 (La. 2003). Such pleadings include motions for preliminary examinations, motions to quash, motions for discovery, motions to suppress, motions for a continuance and requests for bills of particulars. *Id.*

In this case, the original bill of information was filed September 11, 2015, and the trial did not commence until December 18, 2017, more than two years later. However, numerous motions were filed that tolled the time. On October 15, 2015, the defense filed a motion for preliminary

examination.[54]  That motion remained pending more than a year, until November 30, 2016, when it was denied after a hearing.[55]  The defense filed a motion to suppress on January 17, 2017, that was not resolved until June 28, 2017.[56]  Burl himself filed a pro se motion to reveal the identity of the confidential informant and for *Brady* and *Giglio* material on August 31, 2017.[57]  The defense was granted its oral motion to continue the trial on September 18, 2017.[58]  On November 20, 2017, the Trial Court granted the State's motion to continue the trial due to the unavailability of witnesses.[59]

Each extension ultimately broadened the speedy trial period, leaving the actual trial commencement date of December 18, 2017, within the period of limitations set by La. Code Crim. P. arts. 578-580.  It would have been futile for Burl's counsel to file a motion to dismiss the information based on the failure to bring him to trial in a timely fashion under Louisiana law. Counsel cannot be ineffective for failing to pursue a futile course of action.  *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections.").

---

[54]St. Rec. Vol. 1 of 5, Motion for Preliminary Examination, 10/15/15.

[55]St. Rec. Vol. 2 of 5, Preliminary Examination Transcript, 11/30/16.

[56]St. Rec. Vol. 2 of 5, Motion to Suppress, 1/17/17; Hearing Transcript, 2/1/17; Hearing Transcript, 6/28/17.

[57]St. Rec. Vol. 2 of 5, Motion to Reveal the Identity of the Confidential Informant and for *Brady* and *Giglio* Material, 8/31/17.

[58]St. Rec. Vol. 1 of 5, Minute Entry, 9/18/17.

[59]St. Rec. Vol. 2 of 5, Motion to Continue, 11/20/17; Order, 11/20/17.

Burl also appears to claim that his counsel was ineffective in failing to raise an argument that Burl's federal constitutional right to a speedy trial was violated. "The Sixth Amendment guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial.'" *Vermont v. Brillon*, 556 U.S. 81,84 (2009). In *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the Supreme Court recognized that "[i]t is ... impossible to determine with precision when" a specific trial delay crosses the line and becomes unconstitutionally long. *Barker*, 407 U.S. at 521; *Laws v. Stephens*, 536 F. App'x 409, 412 (5th Cir. 2013). The Supreme Court declared that " '[t]he right of a speedy trial is necessarily relative,' " and required the courts to apply "a functional analysis of the right in the particular context of the case [.]" *Id.* at 522 (citation omitted). Courts must consider and balance the following factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to speedy trial; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530; *Amos*, 646 F.3d at 205 (citing *Goodman v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008)); *Doggett v. United States*, 505 U.S. 647, 651 (1992). No single factor is necessary or sufficient to establish a violation. *Id.* at 533.

Under the first *Barker* factor, the Court must consider the length of the delay in Burl's case. Federal law prescribes that calculating time under the first *Barker* factor begins with "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *Dillingham v. United States*, 423 U.S. 64, 65 (1975) (per curiam). As indicated, the original bill of information in this case charging Burl was filed September 11, 2015. As Burl's trial did not commence within two years as prescribed by state law, Burl has made a

threshold showing of significant delay sufficient to trigger a full *Barker* analysis. *See Amos*, 646 F.3d at 206.

The second *Barker* factor considers the reasons for the delay. *Id.* at 207. A court gives different weight to different reasons, and "delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state." *Id.* As previously explained both defense counsel and Burl filed various motions before and after September 11, 2017 (the original speedy trial deadline) which legitimately extended the speedy trial period. The record reflects that the great majority of the delay periods and continuances were attributable to Burl and his defense. The record contains nothing to indicate that the State was primarily or purposefully responsible for any unnecessary delays in Burl's state court criminal proceedings. For these reasons, the second *Barker* factor does not resolve in Burl's favor.

The third *Barker* factor examines whether the defendant "diligently asserted his speedy trial right." *United States v. Parker*, 505 F.3d 323, 329 (5th Cir. 2007). The record reflects that Burl did not file a motion for a speedy trial at any time before he asserted the claim in his state court post-conviction application. This factor also does not weigh in Burl's favor.

Finally, the fourth *Barker* factor examines the prejudice to the petitioner because of the delay. *Barker*, 407 U.S. at 530. Typically, a habeas petitioner carries the burden to demonstrate actual prejudice; however, after reviewing the first three factors, a court must decide whether the petitioner still bears that burden or whether prejudice is presumed. *See Amos*, 646 F.3d at 208.

Burl has not demonstrated that the above three factors warrant a presumption of prejudice in this case. While the delay went beyond the initial speedy trial period, valid reasons existed for the delays and a great majority of that time was attributable to Burls defense. Accordingly, for

Burl to prevail on a speedy trial claim, he must establish actual prejudice and demonstrate that prejudice adequately exceeds the other factors. *United States v. Frye*, 489 F.3d 201, 212 (5th Cir. 2007); *see also Amos*, 646 F.3d at 208 n.42 (no presumption of prejudice even when two of the first three *Barker* factors weighed in favor of petitioner).

Under *Barker*, prejudice is based on consideration of three interests: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern accompanying public accusation; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. Of those, the most significant prejudice is the petitioner's ability to prepare his case without limitation. *Frye*, 489 F.3d at 212 (citing *Barker*, 407 U.S. at 532).

Burl has made no showing that his ability to present a defense was impaired in any way by the delay in bringing him to trial. He has not identified any witness or evidence that was unavailable as a result of the delay. Burl has not made the required particularized showing of prejudice, and the fourth *Barker* factor is not in his favor.

For these reasons, Burl has not shown that he suffered an unconstitutional delay in proceeding to a speedy trial on these charges. As a result, he fails to show deficient performance on behalf of his counsel for failing raise claim of violation of speedy trial or any resulting prejudice. Therefore, the Louisiana Supreme Court's denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*. Burl is not entitled to relief as to this claim.

### D.    Failure to Object to Admission of Laboratory Report

Burl also claims that his counsel was ineffective in failing to object to the State's reliance on the certified State Police Crime Laboratory scientific analysis report rather than live testimony.

Under Louisiana law, forensic laboratories are authorized to provide proof of examination and analysis of physical evidence by providing a certificate from the person conducting the examination or analysis which provides certain particulars related to the transfer of the evidence and the details and results of the examination and analysis.  La. Rev. Stat. § 15:499.  When the State intends to introduce a laboratory certificate, the prosecutor must provide written notice of its intent to do so at least 45 days before trial.  La. Rev. Stat. § 15:501.  If the State's certificate and notice comply with the provisions of La. Rev. Stat. § 15:499 and § 15:501, the certificate is admissible and shall be received into evidence as prima facie proof of the facts it contains.  La. Rev. Stat. § 15:500.

However, within thirty days of the filing of notice by the prosecutor, the defendant may file a written demand to have the person who conducted the examination and analysis appear to testify.  La. Rev. Stat. § 15:501.  When this demand is made, the certificate is not deemed prima facie evidence and the analyst must testify to establish the test results.  *Id.*

In this case, on September 22, 2015, pursuant to La. Rev. Stat. § 15:501, the State filed a notice of intent to use and introduce into evidence at trial a certificate of analysis from the Office of State Police Crime Laboratory relating to the controlled substances seized in this case.[60]  The defense did not make a written demand that the scientist who performed the analysis of the drugs testify at trial.  At trial, the State offered the certificate in lieu of live testimony.[61]  The defense did not object, the exhibit was admitted into evidence, and the scientist did not testify.[62]

---

[60]St. Rec. Vol. 1 of 5, Notice of Intent of Use and Introduce a Certificate of Analysis, 9/22/15.

[61]St. Rec. Vol. 2 of 5, Trial Transcript, 12/18/17, at p. 564.

[62]*Id.*, at p. 565.

A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.  In this case, Burl's defense was that the drugs were planted.[63]  He specifically testified that he did not have or see any drugs and did not throw anything out of his car window.[64]  Given the defense that Burl did not possess the drugs at any time, defense counsel presumably made a strategic decision not to object to the admission to the crime laboratory report and that decision did not adversely impact the outcome of the case.  *See Stewart v. McCain*, Civ. Action No. 16-15860, 2017 WL 9855223, at *7 (E.D. La. Aug. 24, 2017) (no ineffective assistance of counsel or resulting prejudice where defense counsel stipulated to allowing certificate of analysis into evidence where results of report were not contested and criminalist's testimony would not have changed the outcome of the proceedings), *adopted*, 2018 WL 3417904 (E.D. La. July 12, 2018); *Goudeau v. Cain*, No. 16-cv-732, 2017 WL 946726, at *9 (W.D. La. Jan. 18, 2017) (sound strategic choice for defense counsel to not challenge entry of certificate of analysis when the prosecution could have been able to introduce the evidence through the doctor's testimony).

Burl fails to show that it was unsound trial strategy on the part of trial counsel to not object to the scientific analysis report in lieu of live testimony or that failing to object had any impact whatsoever on the outcome of the proceedings.  Accordingly, the Louisiana Supreme Court's denial of relief on this claim was not contrary to or an unreasonable application of *Strickland*.  Burl is not entitled to relief as to this claim.

---

[63]*Id.*, at pp.  673-74, 682-83, 736.

[64]*Id.*, at pp. 681, 689-90.

### E.    Failure to Move to Recuse the Trial Judge

Burl also claims that his counsel was ineffective in failing to move to recuse the Trial Judge.  Burl claims that the Trial Judge was under investigation for his sexual involvement with underage females.

Neither federal nor Louisiana law required Burl's counsel to move to recuse the Trial Judge.  "[T]he floor established by the Due Process Clause clearly requires 'a fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case."  *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (citations omitted); *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008); *Samuel v. Warden, Avoyelles Correctional Center*, 51 F. App'x 483, 2002 WL 31319336, at *1 (5th Cir. Sept. 30, 2002).  Both federal and Louisiana law presume that trial judges act fairly and impartially, and the burden is on the defendant to prove otherwise.  *See Bigby v. Dretke*, 402 F.3d 551, 558 (5th Cir. 2005) (citing *Bracy*, 520 U.S. at 909); *State v. Odenbaugh*, 82 So. 3d 215, 47 (La. 2012) (citations omitted); *State v. Gatewood*, 103 So. 3d 627, 638 (La. App. 5th Cir. 2012) (citations omitted).  When recusal is requested, Louisiana law places the burden on the movant to make affirmative allegations of fact to support recusal. *State v. Williams*, 601 So. 2d 1374, 1375 (La. 1992). La. Code Crim. P. art 671 provides the following pertinent grounds on which a trial judge shall be recused:

> A. In a criminal case a judge of any court, trial or appellate, shall be recused when he:
>
> > (1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
> >
> > [...]
> >
> > (6) Would be unable, for any other reason, to conduct a fair and impartial trial.  There was no basis to move to recuse the Trial Judge.  La. Rev. Stat.

Mere conclusory allegations of bias and prejudice do not provide a basis for recusal under Louisiana law.  *See State in the Interest of M.J.*, 160 So. 3d 1040, 1055-56 (La. App. 4th Cir. 2015) (finding allegation of bias and prejudice to be "subjective and conclusory" where the trial judge provided objective reasons for his rulings and made no statements to support a finding of actual bias or prejudice).  Burl's conclusory and subjective beliefs that the Trial Judge was biased against him are unsupported by the record.

Burl presents no evidence that the Trial Judge was actually under investigation at any time during the pendency of his trial or sentencing.  The sole evidence Burl presents is a portion of an undated newspaper article indicating that former Judge Jeff Perilloux was paid his salary while suspended from the bench while he awaited trial on sex charges.[65]  However, Perilloux was not disqualified from exercising any judicial function until June 29, 2018, nearly two months after Burl's sentencing.[66]  Even if the Trial Judge was under investigation during the pendency of Burl's case, Burl has not presented any evidence that defense counsel was actually aware of that investigation or that he could have discovered the information.  Notably, Burl himself seems to admit that defense counsel was unaware of the investigation as Burl claims that the Trial Judge and the prosecution "suppressed" the information from defense counsel.[67]  Burl, however, has not presented any information that the Trial Judge or the prosecution played any role in the investigation or were even aware of any such investigation at any time before Burl was sentenced.  Rather, Burl admits that the Trial Judge voluntarily stepped down from the bench on May 16,

---

[65]Rec. Doc. No. 3-1, at 1.

[66]*In re Judge E. Jeffrey Perilloux*, 248 So. 3d 1284 (La. 2018).

[67]Rec. Doc. No. 3-2, p. 14.

2018, two weeks after Burl's sentencing, following the first published accounts relating to the criminal investigations of Perilloux.[68]  Further, it appears that the Trial Judge was not actually charged until June 2018.[69]

Thus, Burl has failed to establish that his counsel had reason to seek recusal of the Trial Judge, that a motion to recuse would have been successful, or that he was prejudiced in any way. Counsel does not act deficiently in failing to file a meritless motion.  *See Smith*, 907 F.2d at 585 n.6; *Koch*, 907 F.2d at 530.  In the absence of the required showing, Burl has not demonstrated that the denial of relief was contrary to or an unreasonable application of Supreme Court law.  Burl is not entitled to federal habeas relief on this claim.

### F.    Failure to Object to Sentence or File a Motion to Reconsider

Burl claims his defense counsel was ineffective in failing to object to his consecutive twenty-five year sentence for felon in possession of a firearm as well as for failing to move for reconsideration of sentence.

"The failure to file a motion to reconsider sentence does not by itself constitute ineffective assistance of counsel.  In order to prevail, the petitioner must show a reasonable probability that, but for counsel's error, his sentence would have been different." *Mazique v. Robinson*, Civ. Action No. 17-6675, 2017 WL 6628234, at *10 (E.D. La. Oct. 25, 2017) (citing *Green v. Cain*, Civ. Action No. 97–3206, 1998 WL 259970, at *7 (E.D. La. May 19, 1998)), *adopted*, 2017 WL 6624031 (E.D. La. Dec. 28, 2017).

---

[68]*Id.*

[69]On June 29, 2018, the Louisiana Supreme Court disqualified the Trial Judge from exercising any judicial function during the pendency of further proceedings pursuant to La. Const. art. V, § 25(C) and Supreme Court Rule XXIII, § 27.  *In re: Judge E. Jeffrey Perilloux*, 248 So. 3d 1284 (La. 2018).  On November 4, 2020, Perilloux was suspended from the practice of law pursuant to Supreme Court Rule XIX, § 19.  *In re: Elzey Jeffrey Perilloux*, 303 So. 3d 626 (La. 2020).

La. Code Crim. P. art. 883 provides as follows:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.

Under article 883, the sentences could run concurrently, "unless the court expressly directs that some or all be served consecutively." A trial judge retains the discretion to impose consecutive sentences on the basis of other factors, including the offender's past criminality, violence in the charged crimes, or the risk that the defendant poses to the general safety of the community. *State v. Thomas*, 719 So. 2d 49 (La. 1998) (per curiam). Consequently, under Louisiana law, it was within the Trial Court's discretion to impose a consecutive sentence as to count five and there was no basis to object or move to reconsider the consecutive nature of the sentence.

Nevertheless, even if the Court were to assume that counsel performed deficiently in not objecting or filing a motion to reconsider the sentences, Burl's ineffective assistance claim still fails because he cannot show that he was prejudiced as a result. The Trial Court, in sentencing Burl, noted:

> This Court recognizes the defendant's long history of criminal behavior, as well as the serious nature of the various offenses contained within his most recent convictions. Mr. Burl has consistently engaged in a pattern of criminal conduct, which makes him a threat to society, and I find that he is, indeed, a menace in the community.[70]

In sentencing him to a consecutive sentence of twenty-five years, the Trial Court reasoned:

> And due to defendant's lack of regard for abiding by and following the law of society, his violent criminal history, and multiple offender status, shall be served consecutive to the other sentences imposed today[71]

---

[70]St. Rec. Vol. 3 of 5, Sentencing Transcript, 5/2/18, at p. 746.

[71]*Id.*, at p. 748.

Based on the Trial Court's comments, Burl has not shown a reasonable probability that, had counsel objected or filed a motion to reconsider sentence, the motion would have been granted or the consecutive sentence would have been found excessive on appeal.

The denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*. Thus, Burl is not entitled to relief on this claim.

### G.    Ineffective Assistance of Appellate Counsel

Burl claims his appellate counsel was ineffective in failing to raise on appeal a claim of ineffective assistance of trial counsel due to a conflict of interest.

Burl himself initially raised his claim of ineffective assistance of appellate counsel on direct appeal, but the Louisiana Fifth Circuit found that the appellate record was insufficient to address his ineffective assistance claims.[72]  Burl raised ineffective assistance of appellate counsel in his application for post-conviction relief.  The Louisiana Supreme Court found Burl failed to show he received ineffective assistance of counsel under *Strickland*.[73]

Criminal defendants are entitled to effective assistance of counsel in their first appeal of right.  *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).  The *Strickland* standard for judging performance of counsel also applies to claims of ineffective appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1997).  To prevail on a claim that appellate counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient

---

[72]*Burl*, 282 So. 3d at 321-22; St. Rec. Vol. 5 of 5, 5th Cir. Opinion, 18-KA-698, p.6, 10/2/19.

[73]*Burl*, 297 So. 3d at 764; St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2019-KO-01948, 7/2/20.

representation. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001); *Smith*, 528 U.S. at 285–86.

Effective appellate counsel is not required to assert every nonfrivolous available ground for appeal. *Green*, 160 F.3d at 1043 (citing *Evitts*, 469 U.S. at 394). On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue every nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). Appellate counsel has the discretion to exclude even a nonfrivolous issue if that issue was unlikely to prevail. *See Anderson v. Quarterman*, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit. As such, failure to raise these issues did not prejudice Anderson."); *Penson v. Ohio*, 488 U.S. 75, 83–84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); *Kossie v. Thaler*, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised). Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be found constitutionally ineffective for failure to assert every conceivable issue. *Smith*, 528 U.S. at 288; *Jones*, 463 U.S. at 754.

Rather, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Far from

evidencing ineffectiveness, an appellant counsel's restraint often benefits her client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." *Id.* at 753. As a result, the test to be applied in assessing such a claim is whether the issue ignored by appellate counsel was "clearly stronger" than the issues actually presented on appeal. *See, e.g.*, *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007); *accord Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Burl's counsel was not required to raise every possible claim appearing on the record. Burl's appellate counsel raised a single claim, that is that Burl's sentences were excessive. Although that claim was ultimately found to be without merit, Burl has not shown that his claim of ineffective assistance of counsel due to a conflict of interest was clearly stronger.

Notably, while Burl's appellate counsel did not raise an issue of ineffective assistance of trial counsel, Burl raised the issue himself on direct appeal.[74] Thus, obviously he cannot show any prejudice as a result of his appellate counsel's failure to raise the issue. Further, in the last reasoned opinion, the Louisiana Fifth Circuit found that "the appellate record is insufficient to address defendant's claims of ineffective assistance of counsel. Therefore, we find it best that defendant's claims be considered in their entirety by the trial court on post-conviction relief."[75] Given that the state courts found that the issue of ineffective assistance of counsel should be raised in an application for post-conviction relief, appellate counsel's failure to assert the issue on direct appeal cannot be deemed deficient performance.

---

[74]St. Rec. Vol. 5 of 5, Pro Se Appeal Brief, 2018-KA-0698, 9/11/18 (signed 8/28/18).

[75]*Burl*, 282 So. 3d at 321;

The denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*. Thus, Burl is not entitled to relief on this claim.

## VI.   <u>Violation of Due Process Based on Judicial Bias (Claim No. 2)</u>

Burl appears to claim that, during the pendency of his case, the Trial Judge was under criminal investigation for allegations of sexual conduct with minors. Burl claims that the District Attorney's Office used its knowledge of the investigation to influence the Trial Judge's decisions in the case. Burl alleges that the Trial Judge's judicial actions and rulings "were motivated by the advancement of his personal interest and were influenced by his personal multiple criminal investigations into his behavior with underage females. The judge's actions and rulings were intentional, egregious, and committed in bad faith."[76]

Burl also asserts that the Trial Judge should have recused himself pursuant to La. Code Crim. P. art. 671(A) "when he realized he would have to become personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial, as a result of potential influence the state would have had over the court and defense."[77]

Burl raised this claim in his application for post-conviction relief. The Louisiana Supreme Court found that Burl failed to meet his burden of proof as to this claim under La. Code Crim. P. art. 930.2.[78]

As an initial matter, to the extent Burl complains that the Trial Judge violated Louisiana law, the alleged violation of state law standards of judicial recusal does not merit federal habeas

---

[76]Rec. Doc. No. 3-2, at 14.

[77]Rec. Doc. No. 3-2, at 15.

[78]*State v. Burl*, 315 So. 3d 1275 (La. 2021); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2021-KH-00395, 5/25/21.

corpus review or relief. *Accord Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *see also*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Instead, federal habeas review is limited to reviewing whether a state prisoner is being held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal habeas corpus court, therefore, will not grant relief unless errors in a state court proceeding resulted in the "denial of fundamental fairness" under the Due Process Clause. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir .1998) (citing *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir.1983)).

As for Burl's due process claim, the Due Process Clause requires " 'a fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (internal citation omitted); *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008); *see Samuel v. Warden, Avoyelles Corr. Ctr.*, 51 F. App'x 483 (5th Cir. 2002). Even when there is no actual bias, "[r]ecusal is required when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.' " *Rippo v. Baker*, 137 S.Ct. 905, 907 (2017). In applying this standard, the court must determine "whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Rippo*, 137 S.Ct. at 907 (quoting *Williams v. Pennsylvania*, 579 U.S. 1, 8, 136 S.Ct. 1899, 1905, 195 L.Ed.2d 132 (2016) ).

Presumptive bias has been found to exist in three situations: (1) the decision-maker has a direct or pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi-judicial decision-

maker has the dual role of investigating and adjudicating disputes and complaints. *Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005) (citing Supreme Court case). Federal law presumes that trial judges act fairly and impartially, and the burden is on the defendant to prove otherwise. *Id.,* at 558 (citing *Bracy*, 520 U.S. at 909)

Initially, in an attempt to show actual bias, Burl points to several adverse rulings by the Trial Judge including: (1) not removing defense counsel despite Burl's claimed conflict of interest; (2) allowing the State to file a post-hearing memorandum after Burl was found to be a second felony offender and subsequently adjudicating him a third felony offender; and (3) ordering, at the State's request, his sentence for possession of a firearm by a convicted felon to be served consecutive to the other sentences without justification.

The Supreme Court has stated, however, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (examining judicial bias not in the context of a due-process violation, but rather in the context of a motion for recusal under 28 U.S.C. § 455). Judicial opinions will only support an actual bias claim if they reveal favoritism or antagonism such that fair judgment is impossible. *Id.*, 510 U.S. at 555.

Here, the record fails to reflect any actual bias on the part of the Trial Judge merely because he ruled against Burl in the instances complained. Burl has not shown that the rulings complained of by the Trial Judge were erroneous, legally, or factually. For instance, on the morning of trial, after defense counsel explained that he and Burl were not getting along, the Trial Judge stated that he was not inclined to continue the case, but briefly delayed the trial, and allowed defense counsel

and Burl time to meet to discuss the matter.[79]  When the court reconvened, defense counsel was

prepared to go forward and there was no further discussion regarding any issues between Burl and

defense counsel.[80]

An indigent defendant does not have the right to have a particular attorney appointed to

represent him.  *State v. Chester*, 27 So. 3d 837, 838 (La. 2010).  As explained above in section V.,

none of the specific instances of claimed ineffective assistance of counsel demonstrated

professional error nor prejudice.  Thus, there was no basis to remove defense counsel, and the Trial

Judge's failure to do so does not indicate antagonism against Burl or favoritism towards the State.

Burl next complains that the Trial Judge's reconsideration of Burl's multiple offender

status indicates actual bias.  At the initial multiple offender hearing, the State proved beyond a

reasonable doubt that Burl had previous convictions for manslaughter and simple rape.[81]  At that

hearing, Probation and Parole Officer Craig Berteau testified that he supervised Burl for a

conviction for battery of a correctional officer from Claiborne Parish.[82]  The State also offered the

trial testimony of Burl who admitted that he was convicted of battery of a correctional officer when

he was incarcerated in David Wade Correctional Facility in Claiborne Parish.[83]  Because the State

did not have a certified copy of the Claiborne conviction, the State stipulated that it was not

---

[79]St. Rec. Vol. 2 of 5, Trial Transcript, 12/18/17, at pp. 549, 551-54.

[80]*Id.*, at pp. 554-61.

[81]St. Rec. Vol. 3 of 5, Multiple Bill Hearing Transcript, 3/19/18;  St. Rec. Vol. 2 of 5, Multiple Offender Written Reasons for Judgment, 3/19/18.

[82]*Id.*, at pp. 11-12.

[83]*Id*., at p. 6.; St. Rec. Vol. 4 of 5, Exh. 1, Testimony of Howard Burl, Jr. from December 19, 2017, 3/19/18.

sufficient proof for the conviction to be used as a predicate offense.[84]  The Trial Judge did not consider the Claiborne conviction and, because the two other convictions occurred on the same date, found Burl to be a second felony offender.[85]

Thereafter, the State submitted a post multiple offender hearing motion and memorandum requesting to supplement the record with the certified copy of the Claiborne conviction for battery on a police officer and requesting that Burl be classified as a third felony offender for all charges except for the charge of felon in possession of a firearm.[86]  Ultimately, the Trial Judge granted the State leave to substitute the certified copy of the conviction.[87]  At a subsequent contradictory hearing, over defense objections, the Trial Judge accepted the State's offer of a certified copy of the certification packet for battery on an officer, and found that Burl was a third felony offender as to four of the charges.[88]

Notably, principles of double jeopardy are inapplicable to sentence enhancement proceedings.  *State v. McClure*, 165 So. 3d 998, 1005 (La. App. 5th Cir. 2014); *State v. Raymond*, 718 So. 2d 1010, 1014 (La. App. 5th Cir. 1998).  Thus, the State may retry a defendant as a multiple offender if it does not initially meet its burden of proof.  *Id.*  As a result, the Trial Judge acted in

---

[84]St. Rec. Vol. 3 of 5, Multiple Bill Hearing Transcript, 3/19/18, at pp. 8-9, 13.

[85]*Id.*, at p. 14.

[86]St. Rec. Vol. 2 of 5, Post Multiple Offender Hearing Motion and Memorandum, 3/27/18.

[87]St. Rec. Vol. 2 of 5, Order, 3/30/18.

[88]St. Rec. Vol. 3 of 5, Hearing Transcript, 4/16/18; St. Rec. Vol. 2 of 5, Amended Multiple Offender Written Reasons for Judgment, 4/16/18.  Because the conviction for battery on a police officer was not used as a predicate offense for the conviction for felon in possession of a firearm, the Trial Judge found Burl a second multiple offender as to that count.

accordance with the law when he allowed the State to supplement the record to prove that Burl was a third felony offender, and his related rulings were not an indication of actual bias.

Finally, Burl claims that actual bias is demonstrated by the fact that the Trial Judge ordered, without reason and at the State's request, that his sentence for being a felon in possession of a firearm be served consecutively to his other sentences. While the Trial Judge ordered Burl's sentence for being a felon in possession of a firearm be served consecutively to his other sentences,[89] contrary to Burl's claim, there is no evidence that the State actually requested that the sentence be consecutive. It was within the Trial Judge's discretion to impose a consecutive sentence. La. Code Crim. P. art. 883. There is simply no actual evidence that the Trial Judge did so because he harbored antagonism against Burl or favored the State. Rather, as reasons for the consecutive sentence, the Trial Court recognized Burl's long, violent criminal history, the serious nature of his offenses, and his lack of regard for the law.[90]

In this case, Burl has made no such showing that the Trial Judge acted with personal interest or bias in his rulings. The transcripts and orders in Burl's case disclose no comment or remark that would tend to show that the Trial Judge was biased, prejudiced, or partial against Burl or that the Trial Judge had any partiality towards the State or witnesses before him.

To the extent that Burl claims that the fact that the Trial Judge was under criminal investigation constituted an unconstitutional risk of bias, regardless of whether he was actually biased, Burl fails to meet his burden. There is no evidence that the Trial Judge was actually under criminal investigation at any time during the pendency of Burl's case. The sole evidence Burl

---

[89]St. Rec. Vol. 1 of 5, Sentencing Minutes, 5/2/18; St. Rec. Vol. 3 of 5, Sentencing Transcript, 5/2/18.

[90]St. Rec. Vol. 3 of 5, Sentencing Transcript, 5/2/18, at pp. 746, 748.

submitted supporting this claim is a partial undated newspaper article indicating that former Judge Jeff Perilloux was paid his salary while suspended from the bench while he awaited trial on sex charges.[91]  Even if the Trial Judge was under criminal investigation before, during, or after Burl's trial or before his sentencing, there is no evidence that the Trial Judge was aware that he was under investigation during the pendency of Burl's case.  Nor is there any evidence that the St. John the Baptist Office of the District Attorney was involved in the investigation or even aware of it.  Burl himself claims that the investigation of the Trial Judge commenced in Florida.[92]  Burl merely speculates that the Trial Judge and the prosecution both were aware of the investigation and that the Trial Judge ruled against him and in favor of the prosecution in an effort avoid criminal prosecution.  His speculation alone is not sufficient to support his claim.

Burl fails to cite to any Supreme Court precedent in support of his argument that a trial judge under criminal investigation violates the right to due process when he presides over the trial and sentencing where there is no evidence that he or the prosecution was aware of the investigation. The law is clear that when there is no Supreme Court precedent to control a legal issue raised by a habeas petitioner, the Louisiana Supreme Court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law, and no federal habeas relief is warranted.  *See Woods v. Donald*, 575 U.S. 312, 317 (2015) (citing *Lopez v. Smith*, —— U.S. ——, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014)) (per curiam) ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be "contrary to" any holding from this Court." ); *Wright v. Van Patten*, 552 U.S. 120, 1263 (2008) (quotation omitted)

---

[91]Rec. Doc. No. 3-1, at 1.

[92]Rec. Doc. No. 3-2, p. 14.

("Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law."); *Higginbotham v. Louisiana*, 817 F.3d 217 (5th Cir. 2016) (No violation of clearly established law where "the Supreme Court does not appear to have addressed this issue or a 'materially indistinguishable' set of facts"), *cert. denied*, 137 S.Ct. 506 (2016); *Gomez v. Thaler*, 526 F. App'x 355, 359-60 (5th Cir. 2013) (citing *Van Patten*, 552 U.S. at 126) (When no Supreme Court precedent directly addressed the presented issue, it could not be said that the state court unreasonably applied clearly established federal law.).

Accordingly, the denial of relief on this issue by the Louisiana Supreme Court was not contrary to, or an unreasonable application of, Supreme Court law.  Burl is not entitled to federal habeas corpus relief as to this issue.

## VII.   Fourth Amendment (Claim No. 4)

In his fourth claim, Burl argues that both a warrantless search of his residence and a search pursuant to a warrant violated his Fourth Amendment rights.[93]

Burl raised this claim in his application for post-conviction relief.  The Louisiana Supreme Court found that he had not met his burden of proof, citing La. Code Crim. P. art. 930.2.[94]

---

[93]The charges stemming from the evidence seized during the search of Burl's home were severed and the trial in this case only related to the charges stemming from the traffic stop.

[94]*Burl*, 315 So. 3d at 1275; St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2021-KH-00395, 5/25/21.

On January 17, 2017, the defense filed a motion to suppress relating to the search of Burl's residence.[95]  The Trial Court held a hearing on January 24, 2017.[96]  On June 28, 2017, defense counsel withdrew the motion to suppress.[97]

This federal court's review of Burl's Fourth Amendment claims is limited by the Supreme Court's long-standing prohibition in *Stone v. Powell*, 428 U.S. 465 (1976).  In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." (footnotes omitted) *Id.* at 494.  The "full and fair" hearing contemplated by *Stone* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court.  *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986); *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977).

The United States Fifth Circuit has interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity."  *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002).  "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes."  *Caver*, 577 F.2d at 1192.  "[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use

---

[95]St. Rec. Vol. 2 of 5, Motion to Suppress, 1/17/17.

[96]St. Rec. Vol. 1 of 5, Minute Entry, 1/24/17; St. Rec. Vol. 2 of 5, Motion Hearing, Transcript, 1/24/17.

[97]St. Rec. Vol. 1 of 5, Minute Entry: St. Rec. Vol. 3 of 5, Hearing Transcript, 6/28/17.

of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone v. Powell*." *Williams*, 609 F.2d at 220.

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone* prohibition without regard for whether that opportunity is actually exercised by the petitioner or his attempts at relief were unsuccessful. *Janecka*, 301 F.3d at 320-21. This Court has repeatedly held that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." *Bailey v. Cain*, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) (order adopting report and recommendation). Even when a state defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert a Fourth Amendment claim, the fact that the opportunity existed suffices for the *Stone* bar to apply to prevent federal habeas review. *Id.* at 320.

Burl was afforded an opportunity for full and fair litigation of his Fourth Amendment claims in state court. Defense counsel filed a motion to suppress, and the Trial Court held a hearing on the defense's motion. Before it could issue a ruling, defense counsel withdrew the motion. Burl declined the opportunity for full and fair litigation of his Fourth Amendment claim because he withdrew the motion to suppress prior to a ruling by the court. Although Burl did not take advantage of the opportunity for full and complete state court review of his Fourth Amendment claims, the fact that the opportunity existed invokes the bar to federal habeas review under the doctrine of *Stone v. Powell*.

Burl has not met his burden of overcoming the *Stone v. Powell* bar to this Court's review of his Fourth Amendment claims. The Court will not review these claims.

## VIII.   **Denial of Evidentiary Hearing**

Burl asserts that he was entitled to an evidentiary hearing to further develop the factual support for this claim.

To the extent he suggests that the state courts should have provided him with an evidentiary hearing, the claim would not entitle him to federal habeas corpus review or relief. The law is well settled that "infirmities in State habeas proceedings do not constitute grounds for relief in federal court." *Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir. 2001). An attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself, which is the issue to be addressed in federal habeas cases. *Id.*, at 320; *Drevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999); *Lackawanna Cty. Dist. Attorney v. Coss*, 532 U.S. 394, 402-403, (2001) (no constitutional mandate that states provide post-conviction review) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)).

Burl's request for a federal evidentiary hearing in this Court must be denied. As discussed by the Supreme Court in *Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011), the decision to hold an evidentiary hearing is a statutorily mandated determination limited by the provisions of § 2254(e)(2). The statute restricts evidentiary hearings to those instances where the claim relies on a new rule of law retroactively applied on collateral review for which the predicate could not have been previously discovered with due diligence and where the facts would be sufficient to undermine a guilty verdict by clear and convincing evidence. The *Cullen* Court recognized that where these requirements are not met, evidence presented for the first time may not be considered on federal habeas review to address the merits of the claims under § 2254(d)(1). *Id.*

This Court, therefore, is limited to review of the evidence and record that was before the state courts which reviewed the merits of the type of claims at issue. *Cullen*, 563 U.S. at 185; *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011); *Gallow v. Cooper*, 505 F. App'x 285, 295-96 (5th

Cir. 2012); *Thomas v. Thaler*, 520 F. App'x 276, 281-83 (5th Cir. 2013).  In this case, Burl has not based his claims on a new, retroactive rule of law under the provisions of § 2254(e)(2).  He has made no showing of entitlement to relief from his convictions by clear and convincing evidence undermining his guilt.  For the reasons previously discussed, he has failed to establish his entitlement to federal habeas relief.  Therefore, there is no basis for this Court to grant an evidentiary hearing.

## IX.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Howard Burl's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[98]

New Orleans, Louisiana, this 9th  day of June, 2022.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[98]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.